LAMONT *v.* GRAND LODGE IOWA LEGION OF HONOR and another.

*(Circuit Court, N. D. Iowa, E. D.* June 20, 1887.)

1. MUTUAL BENEFIT ASSOCIATIONS—BENEFICIARY CERTIFICATE—SUBSTITUTION OF BENEFICIARY.

The beneficiary named in the certificate of a mutual benefit association does not acquire such a vested interest as will prevent the substitution of a new beneficiary, at the option of the holder of the certificate, where the constitution of the association provides "that any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such a change in writing," etc.[1]

2. SAME—SELECTION OF BENEFICIARY—MEMBER OF FAMILY.

A provision in the constitution of such association, declaring that the object of the "order" is to "afford financial aid and benefit to the widows, orphans, and heirs or devisees of the deceased members of the order," will not necessarily restrict the holder of a certificate to the selection of a beneficiary from among the members of his own family.[1]

3. SAME—INSURABLE INTEREST—WAGERING CONTRACT.

In such case, the voluntary selection of a new beneficiary, who has no insurable interest in the life of the holder of the certificate, does not render the transaction void as a wagering contract, where there is no evidence from which it can be inferred that the parties intended it as such.[2]

In Equity. Bill and cross-bill.

*James A. Reed* and *Charles Ogden*, for complainants.

*Wright, Baldwin & Haldane*, for Emily R. Graft.

SHIRAS, J. On the seventh day of April, 1883, J. P. Heulett became a member of the organization known as the "Iowa Legion of Honor;" a certificate of membership being issued to him, reciting that, as member of the Garfield Lodge No. 126, he was "entitled to all the rights and privileges of membership in the Iowa Legion of Honor, and to participate in the beneficiary fund of the order to the amount of two thousand dollars, which sum shall, at his death, be paid to his daughter Mary H. Heulett Lamont." In the constitution of the order it is declared that the business and object of this order are to promote fraternity, and to afford financial aid and benefit to the widows, orphans, and heirs or devisees of the deceased members of the order. Article 1, § 2. By article 7, § 1, it is provided that, "upon the death of a member in good standing of this order, such person or persons as said member may have directed, subject to the limitations of article 1, § 2, of this grand lodge, shall be entitled to receive of the beneficiary fund of this order the sum of two thousand dollars: provided," etc. And by article 8, § 11, that "any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such a change in writing on the back of such certificate, in the form pre-

[1] See note at end of case.

[2] Respecting the rights of strangers in life insurance policies, see Lamont v. Hotel Men's Mut. Ben. Ass'n. 30 Fed. Rep. 817; Batdorf v. Fehler, (Pa.) 9 Atl. Rep. 468; Shugar v. Garman, (Pa.) 4 Atl. Rep. 60; Ruth v. Katterman, (Pa.) 3 Atl. Rep. 835, and note; Price v. Supreme Lodge K. of H., (Tex.) 4 S. W. Rep. 633.

scribed, attested by the recording secretary with the seal of the lodge attached, and the recording secretary shall at once report such action to the grand secretary."

On the thirtieth day of July, 1884, the said Heulett, on the back of the original certificate issued to him, signed the following revocation:

"I, J. P. Heulett, to whom the within certificate was issued, do hereby revoke my former direction as to the payment of the beneficiary fund due at my death, and now authorize and direct such payment to be made to Emily R. Graft.

"Witness my hand and seal this thirtieth day of July, 1884.

"J. P. HEULETT. [Seal.]

"Attest: A. VAN ORDER, Recording Secretary."
[Seal Garfield Lodge.]

On the twenty-fifth day of August, 1884, a new certificate was issued by the grand lodge to Heulett, in which it is declared that the amount of his interest in the beneficiary fund, to-wit, $2,000, shall at his death be paid to Emily R. Graft. August 11, 1885, the said Heulett died at Atlantic, Iowa, and, as both Mrs. Lamont and Mrs. Graft claimed the sum provided to be paid out of the beneficiary fund of the order, the present proceeding was instituted for the purpose of deciding the question, the grand lodge on its part paying the full sum, $2,000, into court, thus leaving the litigation to be carried on by the other parties.

Mrs. Lamont is a daughter of the deceased, and Mrs. Graft is not a relative of deceased, but only a personal friend.

On behalf of the complainant it is claimed, in the first place, that when she was named in the original certificate of membership issued to J. P. Heulett as the person to whom the beneficiary fund was to be paid, an interest was thereby vested in her, and that she could not be deprived thereof, save with her own consent. That such is the rule when a contract of insurance is entered into between a life insurance company and a third party, whereby the company agrees to pay the amount due on the policy to such third party, is not questioned. In such cases the third party or beneficiary is a party to the contract of insurance. When, however, a person joins a mutual benefit association of the character of the Iowa Legion of Honor, his rights in the beneficiary fund, and his control over the same, are usually determined by the constitution of the order. The contract by which Heulett became interested in the benefit fund of defendant was between him and the order, and is evidenced by the constitution of the association, by which it is, in substance, provided that each member in good standing is entitled to have the sum of $2,000 paid at his death to such person as he may designate, and that he may at any time make a new direction or selection of the person to whom such sum shall be paid.

The fact that when Heulett joined the Iowa Legion a certificate of membership was issued to him, in which his daughter was named as the person to whom payment was to be made of the $2,000, did not change the contract between the order and Heulett, nor deprive him of the right, secured by the constitution, of making a new selection of a beneficiary.

Mrs. Lamont acquired no interest therein which would prevent Mr. Heulett from revoking the selection made in the first instance, and designating another as the person to whom payment was to be made.

It is also urged on behalf of complainant that, under the constitution of the order, Heulett could not select as a beneficiary one who was not a member of his family; that the object of the order is to make provision for the widow and orphans of deceased members; and that the order is not bound to make payment to any one not occupying this relation. The order, however, is not questioning its liability to pay. It has paid the amount into court, and the litigation is not over the question whether the order is bound to pay to any one not a member of the family of a deceased member, but over the question of the respective rights of Mrs. Lamont and Mrs. Graft. The constitution does not, however, limit the selection of a beneficiary to the family of members. Financial aid is to be afforded "to the widows, orphans, and heirs or devisees of the deceased members of the order." It is evident that the word "heirs" is used, not in its restricted sense, but to include any one to whom the estate of the deceased might pass by operation of law; and thus would, in many cases, include persons who were but distantly related by blood to the deceased member, who had not in fact ever been members of the family, and with whom, perhaps, he had no personal acquaintance. But, in addition to the widows, orphans, and heirs, it is also provided that aid may be afforded to "devisees." It is clear that this word cannot be intended to bear the technical legal meaning of one to whom real estate is given by the last will of another. There is nothing in the constitution of the order from which it can be inferred that it was one of the purposes of the order to provide a beneficiary fund to be paid to such person as should, under the last will of a deceased member, have devised to him the whole or part of the realty owned by such testator. It is, however, entirely clear, from the provisions of the constitution, that it was one of the objects of the order to create a beneficiary fund to be paid to such person as the members might designate; and the word "devisee," therefore, is used in its primary sense of one *separated* or *designated*.

In many instances a person may wish to provide at his death for the future of one who is neither his wife, child, nor heir, and the constitution of the order enables this to be done by providing that the member may select and designate the person to whom payment of the beneficiary fund is to be made. It is, however, urged that if the construction of the contract is such that Mrs. Graft be held to be the party entitled under its terms to the fund, then it will be, as to her, a wagering contract, and, on the grounds of public policy, she cannot be allowed to recover thereon.

In *Warnock* v. *Davis*, 104 U. S. 775, it was held that, to sustain a contract of insurance between a company and another, on the life of a third party, it must appear that the assured had an insurable interest therein; that is, "a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured.

Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured " It is further held in that case " that the assignment of a policy to a party not having an insurable interest is as objectionable as the taking out a policy in his name." In other words, it is immaterial with what form the wagering contract may be clothed. It is void because of its intrinsic character, irrespective of the mode or manner of its creation.

If, therefore, in the present case, it appeared that in fact the object and purpose of having Heulett become interested in the beneficiary fund of the Iowa Legion had been to enable Mrs. Lamont or Mrs. Graft to speculate on the death of Heulett, then the transaction would be contrary to public policy, and no recovery thereon could be had in favor of the party participating in such wagering contract. It does not appear, however, that Heulett joined the order for the purpose of benefiting Mrs. Graft in any way, or that she had any knowledge thereof. He originally designated his daughter as the person to whom payment was to be made. In its inception, therefore, the contract with the order was entirely valid. The subsequent change in the person named as the beneficiary did not create in Mrs. Graft a vested interest in the fund. She did not procure the change. It was a purely voluntary act on part of Heulett, which he could revoke at any time, and there is nothing in the evidence from which it can be inferred that the parties intended the transaction as a mere cover to an illegal contract. Where a third party, without any insurable interest in the life of another, procures a policy of insurance on the life of such person, either by having a policy issued directly to himself, or by having the person whose life is insured take out a policy to himself, and then assign it, these facts, as is held in *Warnock* v. *Davis*, conclusively show that the transaction is a mere speculation on the life of another, and as such is contrary to public policy, and therefore void.

If, however, a person takes out a policy upon his own life, and by the provisions of his will directs that the proceeds of the policy shall be paid to a third party having no insurable interest in his life, such a transaction would be upheld, unless it was shown that it was a mere cover, resorted to to enable the third party to speculate on the death of the other. A person has an insurable interest in his own life, and a policy issued thereon is his property, and by will or any other proper mode he can designate the person to whom, at his death, the proceeds of the policy shall be paid; and the right of a person to thus provide for the future of another cannot be questioned. Public policy requires that a person having no insurable interest in the life of another shall not be permitted to speculate on such life, and thereby become interested in its early termination; but public policy does not forbid a person from in good faith making provision for the future of another in whom he may be interested, even though the latter may not have an insurable interest in his life. If this were not so, then a person would be debarred from giving a legacy or bequest by will to one who had not an insurable interest on his life, because thereby the legatee would become interested in his early

death.  To prevent the evils resulting from allowing persons having no interest in prolonging the life of another to speculate on such life, the rule is adopted that one having no insurable interest in the life of another shall not be permitted to contract, either directly or indirectly, for the payment of a sum upon the death of the other, but it has never been held that public policy forbids a person from insuring his own life, and by will or otherwise controlling the disposition of the proceeds of the policy.  In such case the beneficiary has no part in the contract of insurance, and has no control over it.

The insured can change the beneficiary at his pleasure; and as the latter has in fact no legal interest in the contract, and had no part in creating it or keeping it in force, it cannot be said that such a contract of insurance is a wagering policy, or that it, in any sense, contravenes the rule of public policy forbidding one without an interest from speculating on the life of another.

The facts of the case are simply these: As a member in good standing in the order, Heulett was interested in the benefit fund of the association, and was entitled to have the sum of $2,000 paid at his death to such person as he should designate.  In the first instance, he selected his daughter as the one to whom the money was to be paid, but he subsequently revoked the selection in the manner provided by the constitution of the order, and designated Mrs. Graft as the beneficiary, and this designation was in force at the date of his death.  It is beyond question, therefore, that it was the intent of Heulett that this money should be paid to Mrs. Graft.  The contract of the association was to pay the sum to the person designated by Heulett, and, as Mrs. Graft is such person, she is entitled to the money.  Accordingly, bill of complainant will be dismissed at her cost, and on cross-bill decree in favor of Emily R. Graft will be entered, adjudging her entitled to the money paid into court.

## NOTE.

BENEFIT ASSOCIATIONS—BENEFICIARIES.  The general rule is that, when not forbidden by the charter or by-laws, a member of a mutual benefit association may change the beneficiaries named in the certificate; but when the charter provides who shall be the beneficiaries, in the event that those named in the policy cannot receive the insurance, the parties cannot make any other persons beneficiaries except those designated in the charter.  Holland v. Taylor, (Ind.) 12 N. E. Rep. 116; Massey v. Mutual Relief Soc., (N. Y.) 7 N. E. Rep. 619; Presbyterian Assur. Fund v. Allen, (Ind.) Id. 317; Mitchell v. Grand Lodge Iowa K. of H., (Iowa,) 30 N. W. Rep. 865; Whitehurst v. Whitehurst, (Va.) 1 S. E. Rep. 801.  The right to change a beneficiary by mutual agreement of the association and the member exists independently of its constitution and by-laws, and may be exercised whenever it is not limited by such constitution or by-laws.  Masonic Mut. Ben. Soc. v. Burkhart, (Ind.) 11 N. E. Rep. 449.

A beneficiary acquires no vested rights to the benefits which are to accrue upon the death of a member, until such death occurs, and the member may exercise the power of appointment without such beneficiary's consent, subject only to the rules and regulations of the society.  Masonic Mut. Ben. Soc. v. Burkhart, (Ind.) 11 N. E. Rep. 449.  But when a benefit association issues a policy to one upon his own life, payable at his death to a third person, and the insured pays the premiums, which are accepted by the company, it cannot resist payment of the policy to the beneficiary on the ground that he is neither a relative, heir, nor devisee of the insured, and that its charter authorizes it to pay to such persons only.  Bloomington Mut. Life Ben. Ass'n v. Blue, (Ill.) 11 N. E. Rep. 331.

The Massachusetts statute, prior to 1882, limited the beneficiaries to the widow, orphans, or other dependents of the member.  Elsey v. Odd Fellows' Mut. Relief

Ass'n, 7 N. E. Rep. 844. This was held to exclude the mother of the member, who was not living with him as one of the members of his family, Id.; also his sister, who was not dependent on him for support, Supreme Council A. L. of H. v. Perry, 5 N. E. Rep. 634. By the act of 1882 the class entitled to become beneficiaries was extended to include any member of the family. Id. The designation of his "estate" as the beneficiary member is ineffective; and, if the money has been received by the executor, he holds it for those entitled to it under the by-laws of the association, if such there are; and, if there are not any such, then for those entitled under the statute of distributions. Daniels v. Pratt, (Mass.) 10 N. E. Rep. 166. Under the laws of Missouri, the beneficiaries are limited to the member's family and dependents. Knights of Honor v. Nairn, (Mich.) 26 N. W. Rep. 826.