## PAGE *v.* METROPOLITAN LIFE INSURANCE COMPANY.

### Opinion delivered March 20, 1911.

1. LIFE INSURANCE—VALIDITY OF ASSIGNMENT OF POLICY.—Any person has a right to procure insurance on his own life and afterwards to assign the policy to another, provided, it be not done by way of cover for a wager policy, even though the assignee has no insurable interest in the life of the insured.   (Page 342.)

2. SAME—WHEN ASSIGNMENT OF POLICY NOT A WAGER.—The assignment of a life insurance policy to one not having an insurable interest in the life of the insured is not objectionable as being by way of cover for a wager policy unless at the time the policy was taken out the insured intended to make such assignment.   (Page 343.)

3. SAME—POLICY PAYABLE TO LEGAL REPRESENTATIVE—EFFECT.—Under a policy of life insurance whereby it was stipulated that it should be payable to the insured's "legal representatives" if he died before a period named, the term "legal representatives" should be understood in its legal and technical sense, in the absence of anything in the policy or application, or in the constitution and by-laws of the association, giving a different meaning.   (Page 343.)

4. SAME—ASSIGNMENT OF POLICY—EFFECT.—A policy of life insurance payable to the insured or his assigns at a future day named, and if he should die before that day to his legal representatives, is assignable, and the assignment passes to the assignee the right to receive the sum insured in case of the death of the insured before the day named.   (Page 345.)

5. DEFINITION—LEGAL REPRESENTATIVES.—The term "legal representatives" is broad enough to cover all persons who, with respect to one's property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law, and includes assignees as well as executors and administrators.   (Page 345.)

Appeal from St. Francis Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

This is an action by Thomas Page, William Page and Charles Page against the Metropolitan Life Insurance Company to recover on a policy of life insurance.  The policy was issued on June 30, 1905, and was payable to Ben Page, the insured, providing he was living at the end of 15 years, or, if he died before that time, it was made payable to his "legal representatives." The policy was for $2,000, and on June 29, 1906, Ben Page, by a

written assignment, transferred the policy to Pettus & Buford. The insured died at his home in St. Francis County, Arkansas, on July 31, 1909. Upon proof of death being made, the insurance company paid the full amount of the policy to Pettus & Buford.

Plaintiffs are the surviving children and sole heirs at law of Ben Page, deceased. They demanded payment of the amount of the policy, and, upon the refusal of the company to pay them, brought this suit as above stated. The policy of insurance and the assignment to Pettus & Buford were introduced in evidence.

The court, after the evidence was introduced, withdrew the case from the consideration of the jury, and gave a peremptory instruction for the defendant.

The plaintiffs have duly prosecuted an appeal to this court.

*J. M. Prewett,* for appellants.

1. Language designating a beneficiary in a life insurance policy must be construed as testamentary in character and must receive the same interpretation as if used in a will. 79 Fed. 461; 44 L. R. A. 689. The words "legal representatives" in a life insurance policy are construed to mean "heirs" or "next of kin," or "descendants," and not executors or administrators. 61 N. W. 331; 71 Ill. 91; 26 N. E. 464; 63 S. W. 863-6; 32 S. W. 458-9.

2. The word "assigns," usually found in policies which are assignable by the insured, is not found in this policy. The only interest the insured had in the policy was contingent upon his living fifteen years, and, as written, he had no interest in it that he could assign. 71 Ark. 60; 26 N. E. 464. A policy cannot be assigned without the consent of the beneficiary, nor the beneficiary changed by the insured unless the policy by its terms, or the rules of the company incorporated therein, authorize it. 71 Ark. 295; 52 Ark. 201; 68 Ark. 391.

3. A contract of insurance not supported by an insurable interest in the life of the insured, is void; and an assignment of a policy to one not having an insurable interest is also void. It is a speculative or wager contract, and against public policy. 15 Wall. 643; 104 U. S. 775; 92 Mich. 584; 76 Tex. 400; 9 Fed. 249; 46 Mich. 473; 104 Ga. 446; 51 S. W. 312.

*J. H. Harrod* and *S. H. Mann,* for appellee.

1. The term "legal representatives" means, *prima facie,* executors and administrators, and the only effect of the decisions cited by appellant is that under some circumstances if it can be clearly shown by extrinsic testimony that the party using the term intended that it should be given a meaning different from the *prima facie* meaning the courts will carry out that intention. The acts of the parties under the contract and the construction they have given to it will be looked to, where its terms are ambiguous or uncertain as to intention.     52 Ark. 95; 46 Ark. 122.

There is no conflict of authorities in the holding that the term means executors, administrators or assigns, where the testimony or statute does not expressly require a different interpretation.     86 Fed. 255; 117 U. S. 591 (29 Law. Ed. 997); 92 U. S. 728, 23 Law. Ed. 767; 17 Law. Ed. 854; 34 App. D. C. 575; *Id.* 583; Kirby's Dig. § 7808; 20 Ct. Cl. U. S. 279.

2. The assignment was valid.     77 Ark. 60.

HART, J., (after stating the facts).     Plaintiffs offered to prove that Pettus & Buford had no insurable interest in the life of Ben Page, now deceased, and that they paid nothing to the insured for the transfer to them of the policy sued on.     The court refused to permit them to make this proof, and they now assign as error the ruling of the court in this regard.     They contend that the insured had no right to assign the policy.     There is an irreconcilable conflict of authority upon the question of whether or not a person has the right to assign a policy of life insurance taken out by himself to one who has no insurable interest in his life, but we think the weight of authority and the better reasoning is that any person has a right to procure insurance on his own life and afterwards to assign the policy to another, provided it be not done by way of cover for a wager policy, even though the assignee has no insurable interest in the life of the insured.     This is substantially the language used in a note to the case of *Rylander* v. *Allen,* 125 Ga. 206, reported in 5 Am. & Eng. Ann. Cas. 355.     See also same case and note in 5 L. R. A. (N. S.) 128. There the authorities on both sides of the question are collected, and an examination of the cases cited in both notes will show that a decided majority of the courts of last resort of the various States have adopted the rule above announced.     The objections

to such transfer and the answers thereto are tersely and clearly stated in the case of *Clark* v. *Allen,* 11 R. I. 439, quoted in the case of *Rylander* v. *Allen, supra,* as follows: "A life policy is a chose in action, a species of property, which the holder may have perfectly good and innocent reasons for wishing to dispose of. He should be allowed to do so unless the law clearly forbids it. It is said that such an assignment, if permitted, may be used to circumvent the law. That is true, if insurance without interest is unlawful, but it does not follow that such an assignment is not to be permitted at all because if permitted it may be abused. Let the abuse, not the *bona fide* use, be condemned and defeated. * * * Again, the assignment is said to be a gambling transaction, a mere bet or wager upon the chance of human life. But the wager was made when the policy was effected, and has the sanction of the law. The assignment simply transfers the policy, as any other legal chose in action may be transferred, from the holder to a *bona fide* purchaser. It is true there is an element of chance and uncertainty in the transaction; but so there is when a man takes a transfer of an annuity, or buys a life estate, or an estate in remainder after a life estate. There is in all these cases a speculation upon the chances of human life. But the transaction has never been held to be void on that account. But finally it is urged that the purchaser or assignee subjects himself to the temptation to shorten the life insured, and that this the policy of the law does not countenance. The law permits the purchase of an estate in remainder after a life estate, which exposes the purchaser to a similar temptation."

The insured had the same right to give as he had to transfer the policy for a valuable consideration. *Matlock* v. *Bledsoe,* 77 Ark. 60. This is the trend of modern decision, and it is to be noted that the courts of Indiana and Massachusetts have changed from the minority to the majority rule.

The assignment of the policy in the case at bar was made one year after the policy was issued, and the pleadings in the case do not raise the question that the assignment was made by way of cover for a wager policy. That is to say, it is not alleged that, at the time he took out the insurance, Ben Page intended to assign or transfer it to Pettus & Buford.

The policy of insurance sued on is what is known as an endowment policy, that is, it was payable to the insured himself

if he was living at the end of 15 years and to his "legal representatives" if he died before that time. It is conceded that he died before the end of 15 years, and it is contended by plaintiffs that they acquired a vested interest in the policy by the use of the phrase "legal representatives," and that the insured had no right to assign the policy to Pettus & Buford. They contend that the words "legal representatives" as used in the policy mean heirs. The words "legal representatives" have a well recognized meaning in the law. They are equivalent to executor or administrator, and are technical words. When used in any legal instrument, and there is nothing in the context or otherwise to explain their meaning, they should be understood in their legal and technical sense. *Johnson* v. *Knights of Honor,* 53 Ark. 255; 25 Cyc. 176.

It sometimes happens that the contract of insurance or the application which is made a part of it shows that the parties did not intend to give the words "legal representatives" their primary or usual meaning, and in such cases the courts have construed them to be used in a secondary sense to effectuate the intention of the parties. Sometimes the statute authorizing insurance companies indicates the purpose and objects of the same, and places a limit upon their powers and privileges in regard to designating beneficiaries. In other cases, the constitution and bylaws of the association designate who may be beneficiaries and place a limit to this extent upon the powers of the association, or they forbid a change in the beneficiaries after the issuance of the policy. In all such cases if, by giving the words "legal representatives" their legal signification, it would result that the insurance company had designated a beneficiary which was beyond its power to do, such construction is to be avoided where there is a secondary or broader sense which would make the contract conform to the law or the constitution and rules of the association. In short, the law does not presume that parties to a contract intend by it to accomplish an illegal object, but it rather presumes that they intended to accomplish a legal purpose. In the application of this rule to proper cases, there are a number of decisions in regard to insurance policies where the words "legal representatives," "personal representatives," etc., have been held to mean heirs at law. Counsel for plaintiffs have cited a number

of them in their brief, and others may be found; but we do not deem it necessary to cite them or further comment upon them. They all recognize the rule above announced, and apply it according to the particular facts of each case in order to effectuate the intention of the parties. There is no context in the contract of insurance nor any statute or provision in the charter of the insurance company, so far as the record discloses, that indicate that the words "legal representatives" were used in their broader sense to mean heirs at law.

As above stated, there is no allegation that the assignment was made to cover a speculative risk. The contention is that the policy was not assignable. "A policy of life insurance payable to the assured or his assigns at a future day named, or if he should die before that day to his legal representatives within 60 days after notice and proof of his death, is assignable if the assignment is not made to cover a speculative risk; and an assignment of it passes to the assignee the right to receive the sum insured in case of the death of the assured before the day named. *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591. The court said: "The provision for payment in such case to his legal representatives was intended to meet the contingency of his dying without having disposed of his interest, and not to limit his power over the contract during his life and pass the insurance to those who should represent him after death. The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place, and represent his interests, whether transferred to them by his act or by operation of law. It may, in this case, include assigns as well as executors and administrators."

It follows that the judgment must be affirmed.