PRUDENTIAL INSURANCE COMPANY *v.* WILLIAMS.

Opinion delivered June 15, 1914.

1. PARTIES—PARTIES PLAINTIFF.—Two parties may be joined as plain-
tiffs in an action on a policy of insurance, where both claimed an
interest in the same, and it does not appear that any one else had
any interest in the policy.  (Page 376.)

2. INSURANCE—LIFE INSURANCE—INTEREST OF BENEFICIARY—WAGERING
COTRACT—ASSIGNMENT.—A contract of insurance, taken out in the
name of one who has no insurable interest in the life of the per-
son insured, is a wagering contract and void, but any person may
procure insurance on his own life and afterward assign the policy
to another, provided it is not done by way of cover for a wager
policy, even though the assignee has no insurable interest in the
life of the insured.  (Page 376.)

3. INSURANCE—LIFE INSURANCE—ASSIGNMENT.—Where deceased took
out a policy of insurance on his own life, payable to his executor,
administrator or assigns, and afterward assigned the policy to a
third party, the assignment will be held valid.  (Page 378.)

4. INSURANCE—LIFE INSURANCE—RIGHT TO ASSIGN.—Where a policy of
life insurance is valid in the hands of the insured, who took out
the policy, he has the legal right to assign the policy to a third
person, even though the latter has no insurable interest.
(Page 378.)

5. INSURANCE—WAGERING CONTRACT.—A policy of life insurance is not
rendered void by an unexecuted wagering contract, merely because
the agreement between the insured and a third party would, if per-
formed, have constituted a wagering contract.  (Page 379.)

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*S. S. Hargraves* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. There was a misjoinder of parties plaintiff. The policy of insurance was an instrument for the payment of money, and was assignable, on which the assignee should sue alone. 98 Ark. 340; 37 *Id.* 556; 47 *Id.* 541; Kirby's Dig., § § 509-600. The demurrer and motion to strike was the proper practice to reach the error. 19 Ark. 602; 21 *Id.* 186; 25 *Id.* 327; 33 *Id.* 497-501; 93 *Id.* 215.

2. The rule is that where error is made, prejudice is presumed, unless it affirmatively appears that no prejudice has resulted. 105 Ark. 205; 144 Fed. 614.

3. The proof was undisputed and was clearly sufficient to show that the transaction was a pure wagering contract with Terry, and subsequently assigned to Rolfe. 77 Ark. 60; 98 *Id.* 340; 98 *Id.* 52; 105 *Id.* 228.

4. Rolfe was not entitled to recover at all; he had no interest in the life of Price, and was simply a speculation. 98 Ark. 52; 105 *Id.* 283; 117 U. S. 591; 77 Ark. 60; 104 U. S. 775; 76 Ala. 187; 88 *Id.* 246; 75 Tex. 351; 18 Kan. 93; 67 N. H. 119.

5. There was error in admitting the testimony of Doctor Pool. 117 U. S. 591, and in the court's charge. Cases *supra.*

*R. J. Williams, J. W. Morrow* and *S. H. Mann,* for appellees.

1. There was no misjoinder of parties. 98 Ark. 340; 37 *Id.* 556; 47 *Id.* 541; 154 S. W. 205. But, if so, no prejudice resulted.

2. The verdict settles the facts, and there is no error in the court's charge. 77 Ark. 60; 98 *Id.* 340; 44 L. R. A. 304.

3. The assignment was good as collateral security. 117 U. S. 591.

4. This was not a wagering contract. 98 Ark. 52; 105 *Id.* 281; 32 S. E. 475; 25 Am. St. 114.

McCULLOCH, C. J.   This is an action on a policy of insurance issued by defendant company on the life of one W. L. Price.   The policy was payable to the "executor, administrator or assigns" of Price, and was assigned in writing by Price to E. A. Rolfe a few days prior to the former's death, but the assignment was not presented to the company and accepted by it prior to Price's death.

The suit is prosecuted jointly by Rolfe and by Williams as administrator of Price's estate.   It was alleged in the complaint and proved at the trial that Rolfe held Price's note for the sum of $4,500, and that is the amount which Rolfe claims under the policy.

The court instructed the jury that it was unnecessary to find the amount due to Rolfe, and the verdict was in favor of the plaintiffs for the full amount of the policy without specifying the amount due to each plaintiff.

The surety of the company was joined as defendant.

Objection was made to the joinder of the two plaintiffs in the one action, on the ground that there was no community of interest, and that they could not be properly joined in a suit on the policy.   The court overruled the objection, and the case proceeded as a joint action by the two plaintiffs.

That feature of the case may be disposed of by saying that inasmuch as both plaintiffs claimed an interest, and it does not appear that any one else had an interest in the policy, no prejudice could have resulted in joining the two together in one action. *Kansas City So. Ry. Co.* v. *Mixon-McClintock Co.*, 107 Ark. 48; *Sims* v. *Halliburton*, ms. op.

The company defended on the ground that Price obtained the policy upon false and fraudulent representations concerning his occupation and health; and also on the ground that the policy was a wagering contract, and, therefore, void.

The first defense mentioned above was submitted to the jury upon sufficient evidence, and must be treated as eliminated from the case by the verdict of the jury; in

fact, it is not insisted upon here as a defense upon which reversal of the judgment should be ordered.

It is earnestly insisted, however, that the other defense is one which was established by the undisputed evidence, and also that the issues on that branch of the case were not properly submitted to the jury.

Price resided in St. Francis County, Arkansas, and presented his application to the company in January, 1913, the application being accepted and policy issued by the company on January 25, 1913, and forwarded to its soliciting agent at Forrest City to deliver. Price assigned the policy to Rolfe on February 11, 1913, which was only a short time before Price's death, the precise date of his death not being stated, but it is stated that it occurred some time within the month of February, 1913.

The theory of the defendants is that the policy was procured from the company pursuant to an agreement between Price and one Terry to the effect that Terry was to pay the premiums and take four-fifths of the policy, leaving one-fifth to the estate, and that an assignment of the policy was to be subsequently executed by Price to Terry; that Terry died before the assignment to him could be executed, and that Rolfe thereupon took Terry's place in the arrangement, and that Price assigned the policy to him pursuant to the original agreement with Terry. The contention is, in other words, that this arrangement was merely intended as a cloak for a wagering contract, which the law will disregard and treat the policy as void on that account.

Now, out of the conflict of authority on the question of wagering contracts of insurance, this court has taken the position in former decisions that a contract of insurance, taken out in the name of one who has no insurable interest in the life of the person insured, is a wagering contract and void (*McRae* v *Warmack*, 98 Ark. 52), but that "any person has a right to procure insurance on his own life, and afterward to assign the policy to another, provided it be not done by way of cover for a wager policy, even though the assignee has no insurable interest in

the life of the insured." *Page v. Metropolitan Life Ins. Co.*, 98 Ark. 340.

In *McRae v. Warmack, supra*, we said: "The assignment of a policy of insurance to one having no insurable interest in the life of the insured, though issued to one having such interest, will be ineffective and invalid if such assignment was made in pursuance of an agreement made at the time of the issuance of the policy."

According to these decisions, the assignment to Rolfe was valid, even though he had no insurable interest in the life of Price, provided it was not done pursuant to such an agreement, entered into at the time of the issuance of the policy, as would render it a wagering contract. There is very little, if any, testimony tending to show that Rolfe had anything to do with the issuance of the policy or at that time was in any manner interested in it. But that question was submitted to the jury, and the verdict settles it in favor of the plaintiffs. The court properly instructed the jury that if Price took out the policy on his own life, payable to his executor, administrator or assigns, and afterward assigned it to Rolfe, the assignment was valid.

Defendants asked the court to give the following instruction, which was refused:

"No. 5.   If you find from the evidence that the insurance in this case was taken out by an understanding between Wm. L. Price and Bonner Terry, with the understanding and agreement that the premiums should be paid by Bonner Terry and the policy assigned to him, said Bonner Terry taking a part of the insurance in the event of the death of the said Price, and the balance being paid to the estate of said Price, the said Bonner Terry at the time having no insurable interest in the life of Price, and you further find that the policy was issued in furtherance of this arrangement; then you are instructed that the policy was a wagering contract, and was unlawful and void, and your verdict will be for the defendants, even though you should find that plaintiff, E. A. Rolfe, did not

participate in the arrangement for the issuance of the policy, between Terry and Price.''

The effect of that instruction was to tell the jury that the alleged agreement between Price and Terry avoided the policy, even though nothing was done after the issuance of the policy to effectuate that agreement. Such is not the law. If the policy was valid in the hands of Price, he had the legal right to assign it to Rolfe, even though the latter had no insurable interest.

The question, therefore, is whether the policy, at the time of the assignment to Rolfe, was a valid one in the hands of Price.

If Price had assigned the policy to Rolfe pursuant to the original agreement with Terry, it would have amounted to a mere cloak or subterfuge to cover up a wagering contract, and the law would declare it invalid; but this instruction declared the policy to be invalid, even though it was never assigned to Terry nor to Rolfe pursuant to the agreement with Terry. The testimony on this point can not be said to be undisputed. The soliciting agent testified that when he received the policy, he delivered it to Price in the presence of Terry, but he explained further that he did not actually hand the policy to Price, but kept it in his possession for Terry's benefit. He states that Price told him at the time not to deliver the policy to Terry. There is also some confusion in the testimony of the soliciting agent as to whether the premium was paid to him by Price, or by Terry. The agent actually kept the policy in his possession, but he stated that he had delivered it to Price. We think his testimony is undoubtedly sufficient to show that there was a sufficient delivery to make a binding contract on the part of the company. The agent who obtained the policy retained it until after the death of Terry and until the assignment was executed by Price to Rolfe, when he turned the policy over to the latter. The jury might have found that Price never did anything toward carrying out his alleged agreement with Terry to assign the policy to him. They might have found that he never intended to do so,

or that he borrowed the money from Terry to pay the premium, and, at most, only intended to assign the policy to Terry, as security for the debt, which he had a right to do without invalidating the policy.

Whether the delivery of the policy to Terry, or its remaining in the hands of the agent for the benefit of Terry with Price's consent without formal assignment in writing, would have been sufficient to constitute a wagering contract we need not decide, for, as before stated, the testimony is not undisputed on that point, and this instruction does not submit that issue to the jury. It merely tells the jury that if such an agreement had been entered into between Price and Terry, it would have rendered the policy void, even though nothing was done toward carrying out that agreement, and the policy was subsequently assigned to Rolfe without any participation on his part in that agreement. It certainly is not the law that the policy could be rendered void by an unexecuted agreement between Price and Terry merely because that agreement would, if performed, have constituted a wager contract. Something had to be done in performance of the agreement in order to render the policy void as a wager contract, and if Price did nothing in performance of his alleged unlawful contract with Terry, the policy issued to him by the company was valid, and he had the right to assign it to some other person. The instruction, therefore, was clearly incorrect, and the court properly refused to give it.

Our conclusion, therefore, is that the case was properly submitted to the jury, and that the verdict should stand.

Te jury did not determine how much of the policy should go to the administrator and how much to Rolfe, nor need we decide that matter here. Judgment affirmed.

KIRBY, J., dissents.