LANGFORD *v.* NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

Opinion delivered February 1, 1915.

1.  INSURANCE—RIGHT OF INSURED TO NAME BENEFICIARY—LIFE INSURANCE—PAYMENT OF PREMIUM BY BENEFICIARY.—A person may take out insurance on his own life, and name any one that he pleases as beneficiary, and where there is no understanding between the insured and the beneficiary, at the time the policy is taken out, the policy will be held valid, although the beneficiary had no insurable interest in the life of the insured, and the policy will not be rendered void, if, thereafter, the beneficiary paid the premiums on the policy up to the time of the insured's death.

2.  INSURANCE—LIFE INSURANCE—PREMIUMS—PAYMENT BY BENEFICIARY.—Where the beneficiary, named in a policy of life insurance, is without fraud in procuring the issuance of the same, and the contract being valid, no ground of public policy would prevent the beneficiary from keeping the contract alive for his own benefit.

3.  INSURANCE—LIFE INSURANCE—WAGERING CONTRACT.—An agreement between the assured and the beneficiary, having no insurable interest, in a policy of life insurance, to the effect that the latter shall pay the premiums, and that the policy shall be taken out in his name, or, if taken payable to the estate of the assured,

that it shall be assigned to the person having no insurable interest, will render a policy taken out in pursuance of such agreement void as a wagering contract.

4. INSURANCE—LIFE INSURANCE—ASSIGNMENT—INTEREST OF BENEFICIARY.—A person may procure insurance on his own life and assign it to one who has no insurable interest in the life of the insured, if it is not done as a cover for a wager policy.

5. LIFE INSURANCE—VALID POLICY—PREMIUMS—PAYMENT BY BENEFICIARY.—Where a policy of life insurance is valid at its inception, the contract is not afterward rendered invalid because the beneficiary, after the insured ceased to pay the premiums, continued to pay the same until the assured's death.

6. LIFE INSURANCE—WAGER POLICY—GOOD FAITH—PREMIUMS—PAYMENT BY BENEFICIARY.—Where the insurance is taken in good faith and is not intended as an evasion of the rule against wager policies, in the absence of some provision in the policy or statute to the contrary, the policy is not thereafter invalidated because the beneficiary named therein keeps the policy in force by payment of the premiums.

7. INSURANCE—MISREPRESENTATIONS BY INSURED—QUESTION FOR JURY.—Whether insured in a policy of life insurance practiced any fraud in the procurement thereof, by way of false representations in his application, is a question for the jury.

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

The appellant sued the appellee on a policy of life insurance. It was alleged that appellee was liable under a contract with the Arkansas Life Insurance Company, on a policy issued by the latter on the life of one Grant Stewart on April 28, 1913. Stewart died March 14, 1914. The appellant was the beneficiary in the policy. Stewart paid the premium on the policy for some time; then the policy came into the possession of the appellant and she paid the premiums continuously from November 17, 1913, until Stewart's death. After the death of Stewart appellant made proper proof of death and demanded payment, which was refused.

The application for the policy contains this provision: "I declare and warrant the answers to the above questions to be true and complete. I agree that said answers, with this declaration, shall form the basis for a

contract for benefits between me and the Arkansas Life
Insurance Company, of Little Rock, Arkansas, and that
the policy which may be granted by this company in pur-
suance of this application shall be accepted subject to the
conditions and agreements contained in said policy. I
further agree that no obligation shall exist by said com-
pany on account of said application or any policy thereon
unless the answers to the above questions and the an-
swers made to the medical examiner are found to be com-
plete and true.''

Among the questions, Stewart was asked what was
his relation to the beneficiary, and answered that she
was his aunt.

There was no express provision in the application or
the policy making the answers in the application warran-
ties and making the application a part of the contract of
insurance. There is a provision in the policy specifying
the conditions upon which the same shall be void; but
there is no provision declaring that the policy shall be
void if the insured answered falsely the question as to his
relationship to the beneficiary. There was a condition to
the effect that the policy should be void if the insured, be-
fore the date of the policy, had been attended by a physi-
cian for any serious disease or complaint, or had, before
said date, any pulmonary disease. The policy also con-
tained this provision: ''This policy is issued upon an
application and contains the entire contract between the
parties hereto. All statements made in the application
shall, in the absence of fraud, be deemed representations
and not warranties.''

The appellant set up the policy, alleged the death of
the assured, that all the provisions of the policy had been
complied with, and that she was entitled to recover
thereon.

The appellee denied that the appellant was related
to Grant Stewart, and denied that she had any insurable
interest, and denied that Stewart was an insurable char-
acter under the terms of the policy, and alleged that he

had broken certain conditions of the application and policy which appellee alleged were warranties.

The appellant testified that her mother was a Stewart; that it was said that she and the assured were related by blood. Stewart called her Aunt Alice. He was a friend of her family and visited her house frequently. She had known him a long time, and he had lived with them. She didn't pay the first premiums on the policy, did not make the application for the policy, and did not know who did. Grant Stewart never talked to her about the policy. She knew nothing about the condition of his health in April, 1913, at the time the policy was issued. About that time he appeared to be all right; never complained about being sick. He was working at the mill. An agent of the company first showed her the policy. He had it in his possession before Stewart died. He showed her the policy and represented to her that he was collecting for the insurance company, and from that time on she paid the premiums.

There was testimony on behalf of the appellee tending to show that the insured, at the time the policy was issued, was afflicted with tuberculosis.

Among other prayers, the appellant asked the court to instruct the jury as follows:

"1. If you find from the evidence that the deceased was an insurable character at the time the policy was written and it was written in good faith and without any element of fraud, on his own application, and that he paid the premiums to begin with, and that after he went away or was disabled to pay the premiums, the defendant carried the policy to the plaintiff herein, and requested her to pay the premiums and she did so in good faith in order to keep the policy in force, and if you further believe that all other provisions of the policy were complied with, you will find for the plaintiff."

"4. The jury is instructed that, although you may find that the plaintiff who is named the beneficiary in said insurance policy may not be related by blood to the deceased, this fact will not render the policy invalid if you

find that he had his life insured in said company in good
faith and was an insurable character under the terms of
said policy at the time the insurance was written and that
he paid the premiums on said policy continuously from
the date of issue as long as he was able to do so, and pro-
vided you find that all conditions of the policy were com-
plied with."

The court refused these and other instructions re-
quested by the appellant, and instructed the jury that,
"the plaintiff is not entitled to recover, taking all she has
said as true, and direct you, therefore, to return a verdict
for the defendant." From a judgment in favor of the
appellee this appeal has been duly prosecuted.

*H. B. McKenzie,* for appellant.

1. The policy was valid in its inception. If so, only
fraud or collusion could invalidate it, and that was a ques-
tion for the jury. A person may take out insurance on
his own life and designate the beneficiary. 127 S. W.
490; 127 Ky. 348; 57 Vt. 496; 135 Am. Rep. 135; 152 Mich.
266; 15 A. & E. Ann. Cas. 232, and note; 101 Mich. 250;
65 Am. St. 693; 77 Ark. 63; 98 Ark. 343; 27 N. Y. 282;
May on Ins., § § 115, 116.

The case of *McRae v. Warmack,* 98 Ark. 52, was a
case of mere wager, and does not apply; nor does 104 U.
S. 775. The instructions asked should have been given.

*Horace E. Rouse,* for appellee.

1. The policy was a wagering contract and void.
77 Ark. 63; 152 Mich. 226, 15 A. & E. Ann. Cas. 232; 98
Ark. 343. The beneficiary had no insurable interest, and
Stewart *warranted* she was his aunt. This also avoided
the policy. 25 Cyc. 705; 98 Ark. 57.

2. A breach of warranty renders the policy void.
53 Ore. 102; 17 A. & E. Cas. 1202; 121 Fed. 664; 46 Atl.
426; 45 *Id.* 774; 72 Ark. 662; 56 N. E. 909; 95 N. Y. Supp.
587; 88 Pac. 401; 64 N. Y. Supp. 183.

3. Where the testimony is uncontradicted, the court
should direct a verdict. 89 Ark. 29; 102 *Id.* 170; 104
*Id.* 268.

WOOD, J., (after stating the facts). The appellee contends that the judgment was correct for two reasons: First, because the policy was a wagering contract and void; second, because the uncontradicted evidence showed that Stewart, the insured, violated the conditions of the contract.

I.  Conceding that appellant had no insurable interest in the life of Stewart, it does not follow that the policy was void as a wagering contract.   In *McRae* v. *Warmack*, 98 Ark. 52, one Boswell had policies of insurance issued on his life under an agreement with one Warmack that Boswell should apply for insurance and that when the policies were issued he should immediately assign the same to Warmack, Warmack agreeing to pay the first and second premiums.   The reason for the agreement was that Boswell was unable to pay the premium for insurance on his life, and in order to have Warmack pay the premiums, Boswell agreed to assign both policies to him when the same were issued, upon the understanding that Warmack should receive the proceeds of one of the policies at the death of Boswell.

In the above case we held that the assignment was invalid because the policies of insurance issued upon such an agreement were void, being wagering contracts.   In that case it appeared that Warmack was the uncle of Boswell, but was in no way dependent upon the latter, and Warmack had no insurable interest in the life of Boswell.

The appellee relies upon the above case to sustain its contention that the policy in suit is a wagering contract.   But the facts of the Warmack case clearly distinguish it from the instant case.   In the Warmack case the policies of insurance and the assignment of those policies were void because before any policies were issued it was agreed between Boswell and Warmack that when the policies were issued they should be assigned to Warmack and that he should pay the premiums in consideration of the assignment to him of the policies.   This assignment and the policies applied for and issued in pursuance of the agreement were invalid from their inception for the

reason that Warmack had no insurable interest in the life of Boswell, and the execution of the contract between them was tantamount to Warmack having the policies of insurance issued upon the life of one in whom he had no insurable interest, which rendered such policies of insurance void as wagering contracts. But here Stewart, the insured, had the policy issued on his own life payable to the appellant, but without any knowledge upon her part, at the time the same was issued that she was made the beneficiary in the policy, and there was no contract or agreement between the appellant and Stewart, that he should have his life insured for her benefit and that she should pay the premiums on the policy when it was first issued or thereafter.

So, under the facts of the present case, the questions are whether or not the policy was void in its inception as a wagering contract, and, if not, was it rendered invalid by reason of the fact that the appellant, as beneficiary, afterward paid the premiums on the same and continued to pay them until the death of the assured.

On the question of whether or not Stewart could insure his own life for the benefit of the appellant, naming her as the beneficiary in the policy, we quote from Mr. Cooley, as follows: "That one has an insurable interest in his own life is an elementary principle as to the existence of which the cases are unanimous. It follows, therefore, that one may take out a policy of insurance on his own life and make it payable to whom he will. It is not necessary that the person for whose benefit it is taken should have an insurable interest." And he cites *Rawls* v. *American Mut. Life Ins. Co.*, 27 N. Y. 284, 84 Am. Dec. 280, where it is held that when the insurance is taken out by the person insured the question of insurable interest does not arise. Cooley's Briefs on Law of Insurance, volume 1, pages 252-4, and numerous cases cited in note.

"If the person whose life is insured pays the premiums there can be no doubt" of the validity of the policy, "even if the beneficiary has no interest, since the

interest of the insured supports the policy.'' 1 May on Insurance, § 112, pp. 201-2, and cases cited in note.

The Supreme Court of Kentucky, in *Hess' Admr. v. Segenfelter*, 127 Ky. 348-351, says: ''All the courts of last resort, with possibly one exception, and the text writers on insurance generally are agreed that a person may take out insurance upon his own life and designate whom he pleases as the beneficiary. This doctrine is based upon the sound and sensible theory that it is not reasonable to suppose that a person will insure his own life, for the purpose of speculation or be tempted to take his own life, in order to secure the payment of money to another, or designate as the beneficiary a person interested in the destruction and not in the continuance of his own life;'' citing numerous authorities.

Our own court recognizes this doctrine in *McRae v. Warmack, supra,* where it is said: ''The policies, it is true, were issued in the name of and to the assured, who had an insurable interest in his own life.'' See *Matlock v. Bledsoe*, 77 Ark. 60-64. See note to *Currier v. Continental Life Ins. Co.*, 52 Am. Rep. 134-141, where many cases are cited.

(1)   Now, as the policy in suit was not taken out at the instigation of the appellant, and there was no understanding between her and Sewart, the assured, at the time it was issued, that it should be taken out for her benefit and that she should pay the premiums, the contract was valid in its inception. Under the policy of insurance the company was to pay ''to the person designated therein'' the amount of the policy in consideration of the premiums. There is no provision in the policy to the effect that if the premiums are paid by the beneficiary named in the policy that the same shall be void. The policy being valid in its inception was valid at the death of the assured, it being conceded that the premiums at that time had all been paid. The policy being valid in its inception, was not rendered void because the beneficiary thereafter paid the premiums. The insured having the right to enter into this contract with the insurance com-

pany, in the first place, for the benefit of the appellant, certainly the policy would not be rendered invalid because she complied with the provisions which required that the premiums should be paid in order to keep the contract in force.

(2)    The beneficiary being without fraud in procuring the issuance of the policy, and the contract being valid, no ground of public policy would prevent her keeping the contract alive for her own benefit. The principle announced in *Matlock* v. *Bledsoe, supra,* is applicable to this phase of the contract. There Judge RIDDICK, speaking for the court, said: "Every person has an insurable interest in his own life, and, as Henry had the right to take out a policy on his own life, payable to his administrator or assigns, it is not disputed that this policy was valid. The policy being valid and belonging to Henry, he had, on the approach of death, the same right to give and transfer this property to any one in whose welfare he felt an interest as he had to dispose of any other property that he owned." *Page* v. *Metropolitan Life Ins. Co.,* 98 Ark. 340.

In the recent case of *Prudential Ins. Co.* v. *Williams,* 113 Ark. 373, 168 S. W. 1114, we said:

"Out of the conflict of authority on the question of wagering contracts of insurance, this court has taken the position in former decisions that a contract of insurance taken out in the name of one who has no insurable interest in the life of the person insured is a wagering contract, and void."

The above language was used with reference to *McRae* v. *Warmack,* where Judge FRAUENTHAL, speaking for the court, said:

"It is therefore well settled that the issue of a policy to one who has no insurable interest in the life of the insured, but who pays the premiums for the chance of collecting the policy, is invalid, because it is a wagering contract and against a sound public policy."

(3)    The above and other language used in *McRae* v. *Warmack* was based upon the facts of that case. This

court, by the broad language used in *Prudential Ins. Co.* v. *Williams, supra,* did not mean to hold that all policies of insurance issued in the name of one as beneficiary, who had no insurable interest in the life of the person insured were void as wagering contracts regardless of whether the policies were so issued in pursuance of an agreement between the insured and beneficiary, that the latter should pay the premiums and receive the proceeds of the insurance. An agreement between the insured and the beneficiary, having no insurable interest, to the effect that the latter shall pay the premiums, and that the policy shall be taken out in his name, or, if taken, payable to the estate of the assured, that it shall be assigned to the person having no insurable interest, renders policies taken out in pursuance of such agreements void as wagering contracts. This is held in and shown by the numerous authorities cited in *McRae* v. *Warmack, supra.* But this court has not held (and in none of the above cases did the facts call for such holding) that policies are void where one insures his own life for the benefit of a third party, who has no insurable interest in the life of the assured, and has such party named as the beneficiary in the policy, there being no understanding between the assured and the third party that this should be done, and that the latter should pay the premiums and get the benefits. Such a doctrine, as we have shown, would be contrary to reason and the great weight of authority.

(4) We have held in recent decisions that a "person may procure insurance on his own life and assign it to one who has no insurable interest in the life of the insured if this is not done as a cover for a wager policy." *Prudential Ins. Co.* v. *Williams, supra; Page* v. *Metropolitan Life Ins. Co.,* 98 Ark. 340; and see *Matlock* v. *Bledsoe,* 77 Ark. 60.

(5) Since the contract was valid in its inception, it follows logically, if not necessarily, from the above decisions, that the contract was not afterward rendered invalid, because the beneficiary, after the insured ceased to

pay the premiums, continued to pay the same until the assured's death.

(6)   Under the above decisions, if the insured, under the facts of this case, had immediately assigned the policy to the appellant, the assignment would have been valid, and would have transferred to her the beneficial interest in the policy.   If the insured had the right to assign appellant the policy after it was issued, then he had the same right to give her the policy in the first instance by naming her as the beneficiary therein.   ''There is no more danger of evil resulting from allowing one to name a stranger as beneficiary in a policy than from allowing one to devise property to a stranger.''   *Lamont* v. *Grand Lodge Iowa Legion of Honor,* 31 Fed. 177. Where the insurance is taken in good faith and is not intended as an evasion of the rule against wager policies, in the absence of some provision in the policy or statute to the contrary, the policy is not thereafter invalidated because the beneficiary named therein keeps the policy in force by payment of the premiums.   See 1 Cooley's Briefs, 258, and cases.

While there is great conflict among the authorities, the weight of authority in this country seems to be in favor of the rule ''that if a policy of life insurance is issued to a person having an insurable interest, an assignment thereof to one having no such interest is nevertheless valid.''   *Mutual Life Ins. Co.* v. *Allen,* 138 Mass. 24, 52 Am. Rep. 245; Cooley's Briefs on the Law of Ins., vol. 1, pp. 262-264.

While there is no assignment of the policy under consideration, the appellant's position as the beneficiary is certainly as favorable as it would have been had the assured taken out the policy in his own name for the benefit of his estate and then afterward assigned the same to the appellant.   In the absence of wagering contract, or fraud, as we have seen, the assured could have done this.

II.   (7)   Under the express provisions of the policy, all statements made in the application were, in the absence of fraud, to be deemed as representations and not

warranties. As to whether or not the assured perpetrated a fraud, upon the insurance company in his statements in the application was a question for the jury under the evidence.

It follows that the court erred in directing a verdict in appellee's favor, and in refusing to grant appellant's prayers for instructions set out. The judgment is therefore reversed and the cause remanded for a new trial.