ATKINS *v.* COTTER.

## Opinion delivered October 11, 1920.

1. PARTNERSHIP—ACCOUNTING—EVIDENCE.—In a suit for an accounting against the partner of plaintiff's husband, evidence *held* not to sustain a finding, based only on defendant's testimony, that plaintiff, in accepting a bill of sale of the firm property to apply on her claim against the firm, agreed to discount her claim 25 per cent.; such testimony being contradicted by the plaintiff and her husband and by the bill of sale.

2. PARTNERSHIP—RELEASE—EVIDENCE.—In a suit for an accounting by the wife of a partner to whom the firm had given a bill of sale of its assets to apply on her claim, evidence *held* to sustain a finding that in accepting the bill of sale plaintiff agreed to release her husband's partner from all liability except as to his individual liability to the firm.

3. INSURANCE—JOINT POLICY—ASSIGNMENT.—Where a policy insuring two partners for the benefit of the survivor was assigned to a creditor, the payment of a subsequent premium by one of the partners was sufficient consideration for the assignee's agreement to claim the proceeds only to the extent of the debt owed to her by such partner.

4. INSURANCE—INSURABLE INTEREST.—One may take out a policy of insurance on his own life and make it payable to whom he will, and it is not necessary that the person for whose benefit it is taken should have an insurable interest.

5. INSURANCE—INSURABLE INTEREST.—A partner has an insurable interest in the life of his copartner, and this interest does not terminate upon dissolution of the partnership.

Appeal from Lee Chancery Court; *A. L. Hutchins,* Chancellor; modified and affirmed.

*Caruthers Ewing,* for appellant.

1. Agency must be shown by positive proof or circustances justifying the inference that the principal has assented to the acts of the agent (126 Ark. 405), and what the agent said if anything can not be looked to as even tending to establish his authority as agent. 93 Ark. 600; *Ib.* 315; 90 *Id.* 104; 1 Mechem on Agency, § 288; 21 R. C. L., p. 280, § 6; 31 Cyc., p. 1652, § C; 129 Fed. 583; 65 N. W. 403-5; 22 *Id.* 276-7; 4 Heisk. (Tenn.) 542.

2. The mere fact that a principal receives and retains the benefits of the unauthorized act of another will

not amount to ratification if what the agent said or did in the transaction if the principal was in ignorance of what the agent had said or done. 74 Ark. 557; 64 *Id.* 217; 55 *Id.* 240; 2 C. J. 495. In line with the Arkansas cases and the statement in 2 C. J. 495 and many cases, see Ala. 446; 3 Col. App. 49; 32 Pac. 176; 102 Ill. 84; 12 N. W. 323; 13 Pac. 388; 49 S. W. 77; 27 N. E. 519; 84 N. W. 63; 62 *Id.* 194; 51 Vt. 414.

3. One dealing with an alleged agent not a general agent is put on notice of the limitations of the agent's authority, and must ascertain what that authority is, and if he fails to do so he deals with the agent at his peril. 104 Ark. 150; 132 *Id.* 371; 105 *Id.* 110; 92 *Id.* 315; 62 *Id.* 33; 23 *Id.* 411.

4. The rule that the principal is chargeable with facts known to the agent only applies when agency is established. It then does not apply if the facts are such that it is reasonably certain that the agent would conceal them from his principal, and it becomes the duty of the one dealing with the agent to make the facts known to the principal himself. 95 Tenn. 53; 143 N. Y. 559; 26 So. 422; 38 La. Ann. 435; 27 N. J. Eq. 33; 59 N. J. L. 225; 87 Wis. 378; 154 Ill. 301; 216 *Id.* 598; 72 Conn. 666; 122 Ga. 362; 93 Ia. 389; 76 Ind. 47; 105 S. W. 130; 14 L. R. A. (N. S.) 376.

5. Every agency is subject to the legal limitations that it can not be used for the benefit of the agent himself or of any other person than the principal in the absence of an agreement that it may be so used; and as this is a matter of law and not of fact, all persons must take notice of it. 21 R. C. L., p. 910; 2 C. J., p. 837; Hufcutt on Agency, 185; 1 Mechem on Ag., art. 754; 139 N. Y. 146; 143 *Id.* 559; 70 L. R. A. 315; 26 Atl. 914; 22 L. R. A. (N. S.), 414.

6. The complainants mistake as to the extent of the liability of Mr. Cotter for the debts of the firm of Atkins & Cotter is ineffective to release him, and, in spite of her error in this behalf, he remains liable for the entire

debt. Elliott on Cont., art. 114; Page on Contracts, art. 172; 35 N. E. 598.

7. An insurable interest is necessary to the validity of a life insurance policy, and one without insurable interest can acquire no rights because his interest is against public policy. 132 Ark. 458; 98 *Id.* 52; 116 *Id.* 527; 119 *Id.* 498.

8. Where the relation out of which insurable interest grows is terminated, as the divorce of husband and wife, or as between partners on dissolution of the firm, the insurable interest ceases to exist. 189 S. W. 429; 83 *Id.* 411; 188 *Id.* 22; 142 Pac. 194; 31 S. E. 381; 28 S. W. 274; 2 Joyce on Ins., arts. 944-5; 1 May on Ins., par. 100-A; 14 R. C. L., par. 97.

In the light of the evidence, it was error to allow Mr. Cotter a 25 per cent. credit in the accounting. Mrs. Atkins agreed only to pay ''her part'' of the Atkins farm account; and if no part of that account was due by her, she certainly agreed to pay no part of it. Cotter is estopped from claiming under the agreement. The recitals in the agreement put him on notice that Mrs. Atkins knew nothing of this alleged arrangement whereby she would pay a debt she did not owe. If this court concludes that Cotter did not sustain his claim that the debt of Mrs. Atkins should be reduced by 25 per cent. of some indefinite amount, there should be no trouble as to Cotter's claim that he entered into a contract with Mr. Atkins as agent for his wife whereby the agent's principal was to pay the agent's debt. Hufcutt on Agency, p. 185; 139 N. Y. 146; 1 Mechem on Agency, art. 754; 143 N. Y. 559. One dealing with an agent with knowledge of the agent's interest must *as a matter of law* know that the contract is invalid, *supra.* 21 R. C. L. 910; 2 C. J. 837.

Cotter can not be heard to say that he was unfamiliar with the lack of authority in Atkins to bind Mrs. Atkins to pay his debt. 70 L. R. A. 315; 55 N. J. L. 329; 26 Atl. 914; 22 L. R. A. (N. S.) 414.

Cotter owed $16,200, and not $8,100, and there was absolutely no consideration for the release of the $8,100, and the release is ineffective. There was no consideration for the agreement for Mrs. Atkins to look to Cotter for only one-half her debt. Elliott on Contracts, art. 114; Page on Cont., art. 172. Where one of the parties knows or has reason to believe that the other is acting under a mistake as to his legal rights, the failure to disclose the extent of legal liability is fraudulent, and there is always relief against it. 35 N. E. 958.

The facts are not controverted as to the insurance policy. While the firm of Atkins & Cotter existed, each had an insurable interest in the life of the other, and it was properly paid to the widow of the one who first died. The policy was assigned to Mrs. Atkins as collateral security for any indebtedness of W. S. Atkins and Arthur Cotter. By accepting the assignment, the widow assumed no liability for premiums. See legal proposition No. 7, *supra.*

*R. D. Smith* and *Mann & Mann,* for appellee.

1. The chancellor did not err in holding that appellee Cotter owed appellant half of what Atkins & Cotter owed her. The finding is in accordance with the pleadings and evidence.

2. There was no error in the finding that Mrs. Atkins was chargeable with the Atkins farm account. The finding could not be otherwise. She was chargeable with it by reason of the agreement and by the fact that she took possession of all the personal property belonging to the Atkins' farm account and used it for her own personal use.

3. There was no error in charging Mrs. Atkins with a sum equal to 25 per cent. of her debt. The evidence shows this was correct.

4. Mrs. Atkins was chargeable with the proceeds of the life insurance policy. The courts of Texas are not in accord with the rule in other States. 116 Ark. 527; 77 *Id.* 60; 98 *Id.* 340; 113 *Id.* 372; Elliott on Contracts,

§ 4072; Bacon on Ben. Soc., § 298; Bacon on Life and Acc. Ins., § 301. If the insurance is valid when the contract is made it is not affected by the loss of interest. 14 R. C. L., § 97; 116 Ark. 527; 77 *Id.* 60; 98 *Id.* 340; 113 *Id.* 372.

A person has such an interest in his partner as will support an insurable interest. The policy was payable to the survivor. Bacon, Life and Acc. Ins., § 301.

5. The chancellor did not err in any of his findings of fact, and they are supported by a clear preponderance of the testimony.

SMITH, J. This suit was instituted for an accounting, it being alleged by Mrs. Atkins, the plaintiff, that in 1912 Atkins & Cotter, a firm composed of plaintiff's husband and defendant, borrowed from her the sum of $15,000. This sum was not repaid, and amounted, a year later, with interest at 8 per cent., to $16,200. This indebtedness was not denied, but the controversy is over credits claimed by Cotter.

Mrs. Atkins, the appellant, owned a farm, which she rented to her husband, whose tenants were furnished by the firm of Atkins & Cotter. On a much smaller scale Cotter was also interested in farming, and his tenants, too, were furnished by the firm of Atkins & Cotter. The farming operations of both Atkins and Cotter were individual enterprises, in which the copartnership of Atkins & Cotter had no interest, except to collect the accounts due it.

On March 24, 1913, the firm of Atkins & Cotter was largely indebted to Mrs. Atkins and to other creditors, whom they were unable to pay, and it had been agreed between Atkins and Cotter that they would file a voluntary petition in bankruptcy; but on that day the following bill of sale was executed to Mrs. Atkins:

"This bill of sale made and executed this 24th day of March, 1913, is to witness: That in consideration of the verbal contract and agreement heretofore entered into by the parties hereto, in consideration of the sum

of $16,200 indebtedness owed to Mrs. Atkins, and further debts which we owed, and which she has assumed and paid, we do hereby sell, transfer and convey unto Mrs. Ella M. Atkins our stock of merchandise and fixtures located in the Atkins building in the city of Marianna, together with all book accounts, claims and demands, mortgages and other evidences of indebtedness now held or owned by the firm of Atkins & Cotter.

"And also all live stock and other personal property of whatever character or kind belonging to the said firm, the said bill of sale being intended as part payment to the said Mrs. Ella M. Atkins of our indebtedness to her.

"Witness our hands this the day and year first above written.

"Arthur Cotter,

"W. S. Atkins."

It will be observed that this writing recites, "That in consideration of the verbal contract and agreement heretofore entered into by the parties hereto," etc., the sale was made; and the principal question in the case is, what was this verbal contract and agreement which the parties had entered into before the execution of the writing?

Atkins was called as a witness by his wife, and testified that he represented her in these negotiations, and that the agreement was that when all the assets of the firm had been reduced to cash he and Cotter would each pay Mrs. Atkins one-half of any balance then remaining due, and he denied that there was any other agreement. On the other hand, Cotter testified that he and Atkins were both insolvent, and that he insisted on the bankruptcy proceedings, unless Mrs. Atkins would agree to hold him liable only for his own individual debt to the firm, and would look to her husband alone for the indebtedness due by her husband to the firm. He testified also that it was his understanding that Mrs. Atkins agreed to discount her indebtedness by 25 per cent.

The court below accepted Cotter's version of the transaction as true, and rendered a decree accordingly, except, in stating the account, the court deducted from the $16,200 due Mrs. Atkins the amount of her husband's account with Atkins & Cotter, which was $7,952.23, and, from the balance then remaining, deducted the discount of 25 per cent., amounting to $2,061.91. This action was unauthorized under any view of the testimony. According to Cotter, the discount of 25 per cent. should have been calculated on the total debt due Mrs. Atkins; while, according to her testimony, it should not have been deducted at all.

We think the preponderance of the testimony sustains Mrs. Atkins' contention in this respect. It was unquestionably concurred in between all parties that the unsecured creditors would not receive more than 25 per cent. of their demands, if the firm went into bankruptcy, and this discussion and conclusion appears to be the basis of Cotter's understanding that Mrs. Atkins was to discount her demand 25 per cent. Both Mrs. Atkins and her husband testified that there was no such understanding, and the bill of sale itself recites the indebtedness due Mrs. Atkins to be $16,200. The decree must, therefore, be modified by striking out this discount of $2,061.91 from the credits allowed Cotter.

In all other respects we think the decree should be affirmed.

There is a lengthy and able discussion in the briefs of the character of the agency conferred by Mrs. Atkins on her husband in the negotiations leading up to the execution of the bill of sale set out above, and of the acts of Atkins under that agency. It is undisputed, however, that Atkins acted for his wife in these negotiations—the contention is that he exceeded his authority, and that Cotter was charged with that knowledge, if Atkins did in fact make the contract which Cotter says was made.

We think the testimony sustains Cotter's version of the terms of the dissolution agreement. He is strongly corroborated by the testimony of one Rodman, the cash-

ier of the bank with which the firm did its banking business, and who testified that he had a number of conferences with the parties during the time the dissolution agreement was being made. That he had several conversations with Mrs. Atkins, and with Cotter; that he talked with them together and separately; that Mrs. Atkins expressed surprise at the size of Atkins' account with the firm, but finally agreed that, if the account was correct, they would make other arrangements to pay into the concern the amount of this account. The testimony of Pugh Govan also strongly corroborated the testimony of Cotter. Pugh was employed by the firm of Atkins & Cotter, and had intimate knowledge of that firm's affairs, and, after the dissolution, was employed by Mrs. Atkins in disposing of the firm assets. His testimony was to the effect that the general understanding was that Cotter was to be liable to Mrs. Atkins only for his individual accounts. Stronger, possibly, however, than all of this testimony is the conduct of the parties subsequent to the dissolution. After that event Cotter retired from the business, and had no further connection with or control over it. Mrs. Atkins took over the business, and put her husband in sole charge of it, and he thereafter collected, for the account of his wife, the various firm accounts due from his tenants on his wife's farm, and disposed of the personal property on the farm for her benefit. It is said that the value of the assets belonging to Atkins on this farm exceeded his indebtedness to the firm, and that it was these assets which formed the basis of the credit extended Atkins individually by the firm of which he was a member. In stating the account between Mrs. Atkins and Cotter the court charged Cotter with his individual account, and the interest thereon, and gave Atkins & Cotter credit for the amount of Atkins' individual debt; and this finding, we think, was not clearly against the preponderance of the testimony.

Prior to the dissolution of the firm Atkins & Cotter procured an insurance policy on their lives, the proceeds to go to the surviving partner, and on November 27, 1909,

the policy was assigned to Mrs. Atkins as collateral security for "the amount of any indebtedness of the said William S. Atkins and Arthur Cotter to the said Mrs. Ella M. Atkins." This policy was kept alive by the payment of premiums by the copartnership during its continuance, and after its dissolution Atkins called on Cotter in regard to the continuance in force of the policy by the payment of the premiums. On that question Cotter testified that, "I told him (Atkins) to tell Mrs. Atkins that I was not in favor of paying any more premiums on this policy until I had an agreement with her that she would hold nothing against the policy except such accounts as I might owe her individually, that I considered I had paid her practically everything I owed her, and would not continue to carry the policy any longer under the existing circumstances." That thereupon Mrs. Atkins executed the following writing:

"Marianna, Ark., January 16, 1917.

"Whereas, There is now held in the Massachusetts Mutual Life Insurance Company, a joint policy on the lives of William S. Atkins and Arthur Cotter, in the sum of $10,000, being numbered 250,910, payable to the survivor of the assured; and,

"Whereas, Said policy is assigned to Mrs. Ella M. Atkins, as security for an indebtedness owing from the said William S. Atkins and Arthur Cotter to her.

"Now, therefore, the said Ella M. Atkins hereby agrees with the said Arthur Cotter, that in the event of the death of said William S. Atkins, prior to that of the said Arthur Cotter, she will not claim any of the proceeds arising from said insurance further than the amount of the debt or debts then owing to her by the said Arthur Cotter; that is to say, that, upon the collection of said insurance policy, the proceeds are to be applied solely to the liquidation of the debt or debts then existing between the said Ella M. Atkins and Arthur Cotter, and the remainder, if any, to be paid to the said Arthur Cotter.

"Witness my hand and seal this the 16th day of January, 1917.                        "Ella M. Atkins."

The execution of this instrument is admitted; but it is said to be void for the reasons, first, that it was without consideration, and, second, that at the time of its execution Cotter had no insurable interest in the life of Atkins. Upon the execution of this agreement by Mrs. Atkins, Cotter paid one-half the premium and Mrs. Atkins paid the other half. Atkins died in the winter of 1917, and the insurance was promptly paid to Mrs. Atkins as assignee of the policy, and the court has charged her with that item in stating the account, and the correctness of that action forms one of the principal questions in the case.

We think the agreement signed by Mrs. Atkins not void as being without consideration. Cotter did not contend that he had fully discharged his indebtedness to the firm, but that he had "practically" done so. Besides, the payment of the premium pursuant to the agreement so to do ($405) was, itself, a valuable consideration.

We do not agree with learned counsel that the agreement was void because Cotter had no insurable interest in the life of Atkins. The law is well settled that one may take out a policy of insurance on his own life and make it payable to whom he will, and it is not necessary that the person for whose benefit it is taken should have an insurable interest. *Langford* v. *National Life & Accident Ins. Co.,* 116 Ark. 527. This was a joint policy, and, in practical effect, was a policy which each of the partners had taken out for the benefit of the other. Atkins and Cotter were partners when the policy was taken out, and the law is also settled that one partner has an insurable interest in the life of another. Learned counsel for Mrs. Atkins concedes this is the law, but insists that this insurable interest terminated upon the dissolution of the partnership. The law is declared otherwise in 2 Joyce on Insurance, section 902, where it is said: "Although it was held at one time that in insurance on lives the insurable interest must exist at the time of the loss, it is now sufficient that there existed a valid interest at the time of effecting the insurance. The fact that such interest

ceased before the death of the assured is immaterial, on the question of the right to recover, unless such be the necessary effect of the provisions of the instrument itself. Thus, a divorce does not terminate a wife's interest in a policy effected by husband and wife on their joint lives, payable to the survivor, it appearing that the wife continued payment of the premiums.''

In the notes to the text quoted, numerous authorities are cited, which we do not review, because, whatever may be the rule elsewhere, we are committed to the doctrine there announced. *Page* v. *Metropolitan Life Ins. Co.*, 98 Ark. 340; *Prudential Life Ins. Co.* v. *Williams*, 113 Ark. 373; *Langford* v. *National Life & Acc. Ins. Co., supra.*

The court below credited the sum found due by Cotter to Mrs. Atkins with the amount of this policy, and, as the insurance exceeded his indebtedness, gave judgment in his favor for the difference. That sum will be reduced by the discount erroneously allowed Cotter, and judgment will be rendered here in his favor for the difference.

McCulloch, C. J., not participating.