MUTUAL AID UNION v. WHITE

Opinion delivered December 1, 1924.

1. INSURANCE—VALIDITY OF CONTRACT WHEN MADE.—If a contract between an insurance company and the insured is not void because contrary to a sound public policy when made, it does not become void because of subsequent conditions, not expressed in the contract, which would have rendered the contract void if in existence at the time it was made.

2. INSURANCE—WAGERING CONTRACT.—A contract, made in good faith, insuring the life of a debtor for the benefit of the creditor, is not a wagering contract, and is enforceable by the creditor at the debtor's death, though the debtor had previously discharged the debt.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*Duty & Duty,* for appellant.

The son-in-law had no insurable interest in the life of the mother-in-law. 148 Ark. 361; 150 Ark. 315; 132 Ark. 458; 104 U. S. 775. The issuance of a policy to one who has no insurable interest in the life of the insured who pays the premiums is invalid because it is a wagering contract and against a sound public policy. 98 Ark. 52; 15 Wall. 643; 94 U. S. 457; 104 U. S. 775. The assignment of a life insurance policy to a creditor, even though absolute, only entitles him to the amount of his debt and the premiums paid. 98 Ark. 52; 76 Ala. 183; 129 Ala. 602; 100 Ky. 606; 76 Tex. 383; 104 U. S. 775.

*Compere & Compere,* for appellee.

The policy was valid at its inception and was not a wagering contract. 145 Ark. 335; 14 R. C. L. 924, § 101; 116 Ark. 527; 25 Cyc. 706, 203 S. W. 332; 16 Am. & Eng. Enc. of Law (2d ed.) 843; 94 U. S. 457; 24 L. ed. 251; 86 Ohio St. 213; 1913D Ann. Cas. 607; 32 Hun. 306; 222 U. S. 149; 56 L. ed. 133; 99 Fed. 64; 39 C. C. A. 625; 94 U. S. 561; 24 L. ed. 251. In the absence of any controlling provision in the contract, the holder of a policy, valid at its inception, is entitled to recover the full amount of the insurance without reference to subsequent diminution or cessation of insurable interest. 25 Cyc. 712.

WOOD, J. The Mutual Aid Union, hereafter called appellant, is a mutual insurance association organized under the laws of Arkansas, with its principal office at Rogers, Arkansas. On the first of March, 1915, Burl J. White, hereafter called appellee, made an application to appellant for a certificate of insurance on the life of Mrs. Martha J. Denton. Appellee signed the application, and named himself as beneficiary. A certificate of insurance was issued on the life of Mrs. Denton, in which the appellee was named as beneficiary. The insured died on the 29th of September, 1922. Under the terms of the certificate the amount due thereon was $1,000. The appellant refused to pay this sum to the appellee, and he instituted this action against the appellant to recover same. The appellant defends the action on the ground that the appellee had no insurable interest in the life of Mrs. Denton. The appellee was not related by blood to the insured, but was her son-in-law. When the benefit certificate was issued, Mrs. Denton was indebted to the appellee in the sum of $200. She was living with appellee at the time the certificate was issued, and had a son about seventeen years old, who also lived with the appellee. She had a bunch of cattle, and she and her son had to be fed. She had a farm of her own, and appellee advanced her money to feed herself and boy and the cattle, and to farm her place. When appellant's agent solicited the insurance, he was informed of the circumstances in regard to appellee's mother-in-law, and that she was indebted to the appellee. Mrs. Denton repaid what she owed appellee in the fall of 1915.

The above facts are undisputed. The appellant asked the court to instruct the jury to return a verdict in its favor, and also presented other prayers for instructions, to the effect that appellee would not be entitled to recover under the policy unless, at the time of the death of the insured, she was indebted to the appellee and the appellee held the certificate as collateral security for such indebtedness; that the relation of son-in-law was not sufficient in itself to give appellee an insurable inter-

est in the life of his mother-in-law, Mrs. Denton, and would not entitle him to recover in this action, although he had paid the assessments due on the certificates for a period of more than seven years, which payments had been accepted by the appellant; that the certificate in controversy, under the facts adduced, was a wagering or gambling contract, on which appellee could not recover anything.

The court refused to instruct the jury as prayed for by the appellant, to which ruling the appellant duly excepted. At the instance of the appellee, the court gave instructions to the effect that, if the jury found that the agent of the appellant soliciting the insurance knew at the time of taking the application that Mrs. Denton was indebted to the appellee, and was so indebted at the time of the issuance of the policy, the appellee had an insurable interest in her life, and that the policy was valid, and continued so, and was in force at the time of her death, although the insured had, in the same year after the issuance of the policy, paid her indebtedness to the appellee; that the liability of the appellant depended on whether the appellee was a creditor of the insured at the time of the application for and issuance of the policy; that the mere fact that the appellee was her son-in-law would not entitle him to recover. The appellant duly excepted to the rulings of the court in the giving of these instructions. The jury returned a verdict in favor of the appellee in the sum of $1,000. Judgment was entered in his favor for that sum, *from which is this appeal.*

The verdict of the jury settled the issue that, at the time of the taking of the application for insurance and the issuance of the policy, appellant's agent who solicited the insurance had knowledge of the fact that the insured was indebted to the appellee, and that he also knew that the insured was the mother-in-law of the appellee.

This court is thoroughly committed to the doctrine that "the issuance of a policy to one who has no insurable

interest in the life of the insured, but who pays the premiums for the chance of collecting the policy, is invalid because it is a wagering contract, and against a sound public policy * * * ; that the assignment of a policy of insurance to one having no insurable interest in the life of the insured, though issued to one having such insurable interest, will be ineffective and invalid if such assignment was made in pursuance of an agreement made at the time of the issuance of the policy.'' *McRae* v. *Warmack,* 98 Ark. 52-56, and cases there cited.

The appellant contends that the doctrine of the above case and cases there cited rules the case in hand. But not so. In the above case Warmack was the nephew of Boswell, and was in no way dependent on Boswell. They entered into a verbal agreement by which Boswell was to insure his life, upon which Warmack was to pay the premiums and take an assignment of the policies, one of which was to be paid to Warmack and the others to the estate of Boswell upon the latter's death. In that case the agreement between Warmack and Boswell that the former should pay the premiums and take an assignment of one of the policies at the time of the issuance of same rendered the contract void from its inception. Warmack, being the nephew of Boswell, and in no way dependent upon Boswell, had no insurable interest in Boswell's life, and the issuance of a policy on the life of Boswell with Warmack as the beneficiary, or the assignment of such policy under agreement at the time that Warmack should pay the premium and receive the proceeds of the policy, was but a wagering contract, and void when made, because contrary to sound public policy. But in the above case we said: ''There are a great many authorities which hold that a policy which is valid at its inception is assignable like any other chose in action, and one should be permitted to dispose of a valid policy of insurance effected in good faith upon his own life.'' We did not hold in the above case that a policy or contract of insurance, valid when made, would become void because of some subsequent condition or occurrence

which the parties, at the time of the making of the contract, did not have in mind, and did not express as a condition subsequent upon the happening of which the contract would be invalidated. Whatever may be the rule in other jurisdictions, our court is unmistakably committed to the doctrine that a contract of insurance, valid in its inception, is not afterwards rendered invalid because the beneficiary, after the assured ceased to pay the premiums, continued to pay the same until the death of the assured. *Langford* v. *National, etc., Ins. Co.,* 116 Ark. 527-536.

In *Atkins* v. *Cotter,* 145 Ark. 326, we held that a partner has an insurable interest in the life of his copartner, and this interest does not terminate upon the dissolution of the partnership. At page 335 we quoted from 2 Joyce on Insurance, § 902, as follows: "Although it was held at one time that in insurance on lives the insurable interest must exist at the time of the loss, it is now sufficient that there existed a valid interest at the time of effecting the insurance. The fact that such interest ceased before the death of the assured is immaterial, on the question of the right to recover, unless such be the necessary effect of the provisions of the. instrument itself."

In *Gordon* v. *Ware National Bank,* 132 Fed. 444, 67 L. R. A. 5501, it is held: "A creditor has an insurable interest in the life of his debtor, and a policy on the latter's life issued to him, or issued to one who has an insurable interest in the life of the debtor and subsequently assigned to him, is valid and enforceable in his hands."

In 14 R. C. L., p. 924, § 101, it is said: "A creditor has an insurable interest in the life of his debtor, and the better view seems to be that where, by a valid contract, a debtor insures his life, making his creditor beneficiary, the creditor paying all premiums, under no agreement for repayment, the creditor may hold the whole proceeds." Numerous cases are cited in notes 10 and 11 to sustain the doctrine of the text.

In *Fitzgerald* v. *Rawlings,* 114 Md. 470, 79 Atl. 915, 1912 Ann. Cases, page 650, it is said: "The law is well settled in this State that a creditor who, in pursuance of a *bona fide* effort to secure a payment of his debt, insures the life of his debtor and takes the policy in his own name, or for his own benefit, is entitled to the proceeds of the entire policy."

In *Amick* v. *Butler,* 111 Ind. 578, a debtor owing $600 had his life insured for the benefit of his creditor in the sum of $2,000, the creditor paying all expenses, premiums and assessments. It was agreed that, if the debtor paid the debt and the expenses of the insurance, the policy should be made over to him. He died in about two years, without having paid anything. The creditor received the full amount of the insurance, and the administrator of the debtor sued to recover the surplus over the amount of the debt. In holding that the creditor was entitled to the full amount of the policy, the court, among other things, said: "It is universally allowable that a creditor may, in good faith, take insurance upon the life of his debtor, either by procuring a policy in which he is designated as the beneficiary, or by assignment. We know of no authority to the contrary of this."

The rationale of the doctrine of all these cases is that, if there be nothing in the circumstances surrounding the making of the contract of insurance to indicate that it was a speculative or wagering contract, which is condemned by a sound public policy, then the parties to the contract have the right to make it, and, if it is valid when made, it does not become invalid because thereafter some contingency may arise which contingency would have rendered the contract void if it had existed at the time the contract was made. If a contract between an insurance company and the insured is not void because contrary to a sound public policy when it is made, then it does not become so because of subsequent conditions, not expressed in the contract, which conditions would have rendered the contract void if in existence at the time it was made.

The undisputed facts show that, at the time this policy was issued, the amount thereof was not out of proportion to the amount of Mrs. Denton's debt to the appellee, and also that there was no understanding between Mrs. Denton and the appellee that she was to reimburse him for the amount of the assessments or premiums paid by him. In short, there was nothing in the circumstances, or in the language of the policy itself, to indicate that it was a wagering contract or that it was not entered into in good faith between the parties. Therefore it occurs to us that, both upon principle and authority, the appellant is bound to fulfill its contract, which was valid in its inception, notwithstanding the debtor upon whose life it ran paid her debt to the appellee several years before her death. Appellee, during all these years that he kept the policy alive by the payment of assessments, received nothing from Mrs. Denton to reimburse him, and the policy was not issued to him under a contract of indemnity or collateral security for his debt and the amount of the assessment paid by him. It was a straight contract to pay him the full amount that had accrued under the policy at the time of Mrs. Denton's death. We see no sound reason why the appellant should not be required to perform its part of the contract. The appellee has performed his. In addition to the authorities cited, see *American Ins. Co.* v. *Manees,* 150 Ark. 315-318; *People* v. *Columbian Woodmen,* 111 Ark. 435; 25 Cyc. 702, 706, 711 and 712; *Ferguson* v. *Mass. Mutual Life Ins. Co.,* 32 Hun 306; *Wurzburg* v. *New York Life Ins. Co.,* 203 S. W. 332; and other authorities cited in brief of appellee.

There is no error in the record, and the judgment is therefore affirmed.