DOROTHY REILLY, Appellant, v. PENN MUTUAL LIFE INSURANCE
COMPANY OF PHILADELPHIA et al., Appellees.

INSURANCE: Life Insurance—Insurable Interest—Corporation as
Beneficiary of Policy on Officer. A corporation which, for its own
general benefit, is the beneficiary in a policy of life insurance on
the life of one of its officers, is unconditionally entitled to the pro-
ceeds of the policy, even though the insured had, at the time of his
death, severed his *official* relation with the corporation.

Headnote 1:  37 C. J. pp. 396, 397.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

MARCH 9, 1926.

ACTION upon a policy of life insurance. The insurer paid

the proceeds of the policy into court, and the controversy is between the beneficiary named in the. policy and the surviving widow, who is also the administratrix of the estate of the insured. Decree was entered in favor of the beneficiary named in the policy, and the plaintiff appeals.—*Affirmed.*

*Wilson & Shaw* and *Howard L. Bump*, for appellant.

*Stipp, Perry, Bannister & Starzinger* and *W. E. Miller*, for appellees.

STEVENS, J.—The admitted facts are that Paul V. Reilly owned fifty shares of the capital stock of the J. W. Turner Improvement Company, Incorporated, and in 1906 became a director and the secretary thereof. The corporation was engaged in the business of general contracting for the construction of public works, such as sewers, paving, etc. It had a capital stock of $15,000, owned almost entirely by Reilly and J. W. Turner. On March 5, 1910, Reilly made application to the Penn Mutual Life Insurance Company for two policies upon his life for $5,000 each. The application was accepted by the company, and policies issued designating the J. W. Turner Improvement Company as beneficiary. At or about the same time, J. W. Turner made application to the same company for two policies, one for $10,000 and one for $5,000, upon which like policies were issued, also designating the corporation as beneficiary. The right to change the beneficiary was not reserved in the policy. The premiums on all of the policies were paid by the corporation for a time, and thereafter they were paid by borrowing the amount from the insurance company on the policy. Reilly resigned his office as secretary and treasurer, and also as a director, of the corporation, and organized a new and independent business of the same character as that in which the corporation was engaged. Reilly was not, at the time he resigned his office in the corporation, indebted to it in any way, except for the premiums advanced by it upon the policies. He retained his stock in the corporation until his death, which occurred November 6, 1923. The policies upon the lives of. Reilly and Turner were obtained for the use and benefit of the

corporation in pursuance of an agreement and understanding between them prior to making application therefor. Appellant claims the proceeds of the policy, less the amount due the corporation for premiums advanced, as administratrix of her husband's estate. The ground upon which her claim is predicated is that the policies were taken out on the life of her husband and made payable to the corporation as beneficiary for the sole purpose of securing the payment of any and all indebtedness of her husband thereto.

It is, as already stated, conceded by the corporation that the insured was indebted to it only for the premiums paid by it. The answer alleges that the policies were taken out by the corporation upon the life of Reilly, who was then secretary and treasurer and one of the directors thereof, for the use and benefit thereof; that it paid the premiums, as stated; and that it is, therefore, entitled to the proceeds thereof. The only testimony introduced upon the trial to show the purpose for which the policies were taken, was that of J. W. Turner. We quote the following brief excerpt therefrom:

"Prior to taking out this policy, Mr. Reilly, Mr. Brett, and myself had talked the matter of insurance over for months, and it was understood and decided among ourselves that we ought to cover the officers of the corporation by insurance, so that, as they were the principal assets of a construction company such as we were, and in the event of the death of either of us, we would have an income, or a—I don't know just the word I want to say. The corporation would get the benefit of that insurance, to help tide over the loss that we would be subject to by the death of said official. Second, that, at any time it should be necessary to borrow money on these policies, that we would have an asset that could be readily converted into some cash. In 1907, during the panic, we were badly pressed for money sufficient to carry on our business, and we had that in mind in discussing the matter of insurance, as one of the reasons for taking out the policies. Mr. Reilly was the principal advocate of the insurance scheme. One policy for $5,000 and one for $10,000 was taken out on my life, and two policies of $5,000 each were taken out on Reilly's life. It was always stated that the company would take care of all premiums, and

were to be beneficiaries in the event of the death, or of the policies' maturing. The amount now due on the two policies is $6,710, after deducting the lien. The J. W. Turner Improvement Company borrowed money several times on these policies from the Penn Mutual. Mr. Reilly was informed of the fact of borrowing, and took part in them. We carried the insurance premium accounts together, and they were always grouped together. The policies bore the same date, and they were bunched together and paid together. Mr. Reilly was in charge of the books from 1910 to 1917. Mr. Reilly did not make any claim to the J. W. Turner Improvement Company, so far as we know, or any claim of interest in these policies, so far as I know. Mr. Reilly was a stockholder in the company from the time he went with it as an officer. He owned fifty shares. He owned fifty shares at the time of his death."

From this testimony it is clear that the policy was not taken out by Reilly and made payable to the corporation as security for indebtedness of his thereto. The arrangement was mutual between the parties, and it is manifest that the insurance was taken out for the general benefit and use of the corporation.

The proposition of appellant is briefly and succinctly stated by her counsel in argument as follows:

"Our position in this matter may be stated as follows: The insurance upon the life of Reilly for the benefit of the corporation is in the nature of insurance for the benefit of a creditor, and when the interest of the creditor ceases in the assured, the right to the proceeds of the policy ceases, but does not make the policy void. On the other hand, the proceeds belong to the estate of the deceased, and the beneficiary named, the creditors or the corporation, is trustee of the funds for the benefit of the decedent's estate."

We may, for the purposes of this case only, assume that, if the policy was taken out for the benefit of the corporation as a creditor only, its interest in the proceeds thereof terminated upon the payment thereof. It is conceded that the corporation had an insurable interest in the life of the insured, as an officer of the company, at the time application was made and the policy issued; and it is well settled that a creditor has an

insurable interest in the life of his debtor.  Of course, the insured had an insurable interest in his own life, and could himself take out a policy for the benefit of a creditor.  It may also be assumed, for the purposes of our discussion only, that the corporation, at the time of the insured's death, did not have an insurable interest in his life, unless as creditor for premiums paid, and that, in the absence thereof, it could not take out a valid policy for its own use and benefit upon his life.

Principal reliance is placed by counsel for appellant upon *Cheeves v. Anders*, 87 Texas 287.  Plaintiff in the above cited case was the assignee of a policy taken out upon the life of one Chilton, in favor of Cheeves & Chilton, a corporation, as beneficiary.  All premium on the policy was paid by the copartnership.  The court held that to allow one who has no insurable interest to be the owner of a policy of insurance upon the life of a human being is contrary to the public policy of Texas, and that a policy taken out in favor of a partnership as beneficiary is valid as against the insurer, but that the partnership could profit thereby only to the extent of the insured's indebtedness thereto, and that the partnership would hold the excess merely as trustee for the benefit of those entitled by law to receive it.

It is held in most jurisdictions that the insured may take out a policy on his own life in favor of anyone as beneficiary, whether such beneficiary has an insurable interest in his life or not, ''provided the transaction is bona-fide, without collusion, not intended to circumvent the law, and not speculative, nor a mere cover for the wager.''  2 Joyce on The Law of Insurance, Section 894b; *Davis v. Brown*, 159 Ind. 644 (65 N. E. 908); *Hawley v. Aetna Life Ins. Co.*, 291 Ill. 28 (125 N. E. 707); *United Sec. Life Ins. & Tr. Co. v. Brown*, 270 Pa. St. 270 (113 Atl. 446); *Atkins v. Cotter*, 145 Ark. 326 (224 S. W. 624); *Haberfeld v. Mayer*, 256 Pa. St. 151 (100 Atl. 587); *Cohen v. Edinberg*, 225 Mass. 177 (114 N. E. 294); *American Nat. Ins. Co. v. Moore*, 14 Ala. App. 413 (70 So. 190); *Floyd v. Metropolitan Life Ins. Co.*, 5 Boyce (Del.) 51 (90 Atl. 404); *Langford v. National Life & Acc. Ins. Co.*, 116 Ark. 527 (173 S. W. 414); *Union Fraternal League v. Walton*, 109 Ga. 1 (34 S. E. 317).  The doctrine of these cases is not really before us, as

both parties treat the policies as having been issued at the instance of, and, in one sense or another, for the benefit of, the corporation.

The Texas and some other courts hold to the contrary. The question has not been squarely before this court, but the doctrine was stated in *Belknap v. Johnston,* 114 Iowa 265; and in *Mitchell v. Grand Lodge I. K. of H.,* 70 Iowa 360, we sustained recovery under the provisions of a policy in favor of a beneficiary who was not insured's wife, heir, or a member of his family. The rule in this state is that an assignee of a policy, although he has no insurable interest in the life of the insured, may, nevertheless, maintain an action thereon against the insurer, and recover the insurance. *Farmers & Traders Bank v. Johnson,* 118 Iowa 282.

It thus appears that the doctrine of the Texas court, so far as the right of a beneficiary to assign the policy to one not having an insurable interest in the insured is concerned, is contrary to the rule in this state. It is the rule in most jurisdictions, including Iowa, that, if the beneficiary for whose benefit a policy has been issued, has an insurable interest in the insured when the policy is issued, it is immaterial whether such insurable interest exists at the time of his death or not. *Schmidt v. Hauer,* 139 Iowa 531; *White v. Brotherhood of Am. Yeomen,* 124 Iowa 293.

The question, however, involved upon this appeal is not whether the absence of an insurable interest of the beneficiary in the life of the insured at the time of his death could have been pleaded by the insurer as a defense to the policies, but what is the effect thereof upon the right of such beneficiary, under the facts of this case, to claim the insurance? That is, would such beneficiary, if it had received the proceeds of the policy, hold the same as trustee only for the estate of the insured, or for its own use and benefit absolutely? The question has not previously been before this court. We have held that a divorced wife, named as beneficiary in a life policy during the continuance of the marriage, is nevertheless entitled to claim the insurance. *White v. Brotherhood of Am. Yeomen,* supra; *Schmidt v. Hauer,* supra.

The Supreme Court of Tennessee, in *Wurzburg v. New*

*York Life Ins. Co.,* 140 Tenn. 59 (203 S. W. 332), held that the right of a corporation to claim the proceeds of a policy taken out on the life of its manager is not lost by the severance of his connection with the company.

There is a dearth of authority on the point before us, the Texas case being the only one sustaining the contention of appellant. Other cases and authorities cited by counsel for appellee to the contrary are *Atkins v. Cotter,* 145 Ark. 326 (224 S. W. 624); *Mutual Aid Union v. White,* 166 Ark. 467 (267 S. W. 137); 2 Joyce on The Law of Insurance, Section 902.

Appellee was the creditor of the insured at the time of his death only to the extent of the premiums advanced by it. It did not then have an insurable interest in his life, and could not have taken out a policy thereon for its own use and benefit. But, under the rule announced in our own cases cited supra, as well as those cited from other jurisdictions, we see no escape from the conclusion that the right of the designated beneficiary, for whose use and benefit the policy was taken out, to receive the proceeds thereof, is not defeated by the termination of its insurable interest in the life of the insured. This being true, the trust doctrine can have no application. It is clear from the testimony quoted above that the policies taken out upon the lives of Reilly and Turner were not for the purpose of securing any indebtedness which they might respectively owe to the corporation, but the mutual purpose of the parties was to benefit the corporation.

It is our conclusion that the designated beneficiary is entitled to claim the fund in controversy. This being true, the decree of the court below is—*Affirmed.*

DE GRAFF, C. J., and FAVILLE and VERMILION, JJ., concur.